MARY T. COWLES, APPELLANT, v. JOHN H. WATSON, RESPONDENT.

| 14 | 41 |
| 71 | 116 |
| 14 | 41 |
| 22ap576 | |
| 25ap289 | |
| 14 | 41 |
| 30ap427 | |
| 14h | 41 |
| 83 AD | 473 |

*Contract induced by fraudulent representations — measure of damages — Order denying new trial — appeal from.*

The plaintiff subscribed $5,000 towards the formation of a corporation to operate an oil well, being induced so to do by the false and fraudulent representation of the defendant, that the sum of $500,000 had been paid for the land to be conveyed to the corporation, while in fact the same had cost but $255,000. After the formation of the corporation ; 1,000 shares of stock were

issued to her at five dollars per share, while if the stock had been issued to her according to the actual amount paid for the property, she would have had 1960 shares.

In an action by her to recover damages for the fraud so committed, *held,* that she was entitled to recover the value of the shares so withheld, or the money paid by her as their purchase price.

That her right to recover such damages was not affected by the fact that she had retained her own shares until they became worthless.

Upon an appeal from an order denying a motion for a new trial made upon the minutes of the justice trying the action, it is not necessary that the particular grounds assigned in support of the motion should be specifically mentioned ; it is sufficient if it appear from the order that the motion was actually heard and decided.

*Joannes* v. *Jennings* (4 Hun, 66), distinguished

APPEAL from a judgment recovered on a trial at the Circuit, and from an order denying a motion made upon the minutes, for a new trial.

*E. B. Cowles,* for the appellant.

*Henry J. Scudder,* for the respondent.

DANIELS, J. :

The action was prosecuted for the recovery of damages arising out of what were alleged to have been false and fraudulent representations, made concerning the purchase price of certain oil producing property situated in the State of Pennsylvania. It was in fact purchased for the price of $255,000, and the representation relied upon as the foundation of the action, was that the price paid was the sum of $500,000. The title to the property was acquired on the 25th day of April, 1864, pursuant to the terms of a contract made with the vendor on the 15th of the same month. And a corporation was formed for working the property in the production of oil early in the following month of June. The capital of the corporation was $1,000,000, divided into 100,000 shares of $10 each. And its property consisted of that which was originally purchased for the persons promoting the organization of the corporation for the sum of $255,000. On that purchase the conveyance was made to the defendant and another person, as it was claimed, in trust for the parties then interested in the enterprise.

The plaintiff through her husband, who is her counsel in the case, invested the sum of $5,000 in this enterprise, which was paid in equal amounts on the 19th and 28th days of April, 1864. And for that it was claimed in her behalf that she became entitled to stock on the basis of the original cost of the property. When the stock was issued to her it was not according to that price, but on the basis of the payment of $500,000 for the property. She received 1,000 shares of the stock at the price of $5 each share. While if the stock had been issued to her according to the actual price paid for the property, she would have had 1,960 shares. It was because she had been deprived of this difference of 960 shares that this action was instituted. And to sustain it evidence was given tending to prove that the defendant had represented the cost of the property to be $500,000, and that the plaintiff had been induced by that representation to accept the 1,000 shares of stock, instead of the 1,960 now claimed to have been her proper proportion of the stock of the company.

The sharply contested point upon the trial involved the fact of the making of the representations alleged to have been fraudulent. And as to that, the case on the part of the plaintiff was predicated upon a memorandum in writing made by the defendant, which contained the statement that a producing well upon the land "will pay forty per cent. on $500,000, the cost of the property." It was further added, "stock to be issued 100,000 shares, par value $10, to original subscribers, $5." This was directed to be shown to three persons afterwards named, neither of whom was the plaintiff or her husband. It was claimed that this memorandum which the defendant alone subscribed was designed as a means of inducing persons to whom it might be exhibited to become interested in the enterprise, and that it was not alone for the inspection of those to whom it was directed to be shown. And that it was intended to deceive them by producing the belief that the actual cost of the property was the sum of $500,000. Evidence was given supporting these positions, which was met by the defendant by the assertion that the representations related to what the property was to cost the company to be formed for the purpose of operating it, and that the memorandum was a private one, for the sole use of the three persons to whom it was directed to be exhib-

ited. The case was elaborately tried, and clearly and fairly submitted to the jury. And by their verdict they adopted the plaintiff's theory of the facts, limiting her recovery, however, to the sum of six cents.

Exceptions were taken by her counsel to the manner in which certain propositions presented by him were submitted to the jury. But they related entirely to what was requisite to justify the conclusion that a fraud was shown to have been perpetrated in the case. And as the jury found that in her favor, she had no reason to complain because it might have been more favorably submitted under the evidence. Even if her propositions were too much restricted by the qualifications to which they were subjected, the verdict in her favor is conclusive evidence that she was in no way injured by that circumstance. For that reason she cannot, for the purpose of supporting her appeal from the judgment, derive any assistance from those exceptions. No verdict could have been rendered in her favor unless the fraud had been established to the satisfaction of the jury. And the fact that they gave her a verdict for even nominal damages for that reason shows that they adopted her theory of the case. It was as to this portion of the case alone that her exceptions presented legal propositions. And they have been deprived of all practical value because she has succeeded on the points presented by them. The consequence is that in the appeal taken from the judgment she has no legal ground on which it can be supported. For where a cause has been tried by a jury, the party appealing to the General Term can only do so "upon the law," when the appeal is from the judgment. (Code, § 348; Thurber v. Harlem Bridge, etc., Co., 60 N. Y., 326; Matthews v. Meyberg, 63 N. Y., 656.)

The error in the case was in the measure adopted by the jury for the compensation of the plaintiff's injury. That she had been fraudulently deceived they found to be true as a matter of fact. But they concluded that she had suffered no serious injury by means of the fraud. In that they very clearly fell into an error. For if she had been induced by the defendant to become a party to the enterprise on the representation that the property itself cost $500,000, when in fact its cost was but little over one-half of that amount, she was deprived by means of it of the benefit of

nearly one-half of her investment. The substance of the case, as the jury must have found it established in order to find any verdict whatever in her favor, was that she was entitled to the advantages of the purchase at its actual cost to the defendant and the others acting with him in the acquisition of the property, and that she had been proportionately deprived of so much of them as the represented exceeded the actual price paid. The latter legally and logically followed from the former. If she had been deceived as she affirmed, and the jury concluded, she had, then she was deprived of nearly one-half of the equivalent which she ought to have received for her money. She received but 1,000 shares of the capital stock of the company, when the representation made could only be made good by giving her 1,960 such shares. For that reason the jury should have given her either the value of the shares so withheld from her, or the money paid by her as their purchase price. A party deceived by fraudulent representations has the right, in an action for damages because of the fraud, to be placed in the pecuniary position which the representations made entitled him to believe he was securing by means of the transaction. (*Graves* v. *Spier*, 58 Barb., 349; *Sharon* v. *Mosher*, 17 id., 518.) Such damages are the natural as well as the necessary consequences of the wrong; and to that extent the party injured is legally entitled to compensation by the verdict of a jury. In this case there was no substantial ground for controversy after the fraud was established, because the defendant's answer admitted the actual cost of the property to be the sum of $255,000, instead of $500,000, as the jury must have found it to have been represented. The jury therefore had no discretion over the subject after that, for it then became their legal duty to recompense the plaintiff for the entire amount of her loss arising out of this difference.

It has been objected that they were not bound to do that because of the circumstance that the plaintiff continued to own the stock until it became worthless. But it did not necessarily follow from that fact that she would also have retained the additional shares in the same manner if they had been delivered to her. And if that is to be presumed she would have received the dividends paid upon them, which was shown to have been considerable in amount,

while the property was successfully worked. But a party defrauded cannot be deprived of the damages awarded by law as the measure of legal indemnity, because it can be subsequently seen that what should have been received would have been lost or wasted if he had not been deprived of it. The law entitles the party defrauded to a legal recompense for his injury, and it has never been held that he could only obtain it by showing that in the end he would be correspondingly benefited by what he ought in the transaction complained of, to have received. In any view which can be taken of the case consistently with the verdict, the plaintiff should have recovered substantial, instead of nominal damages. And as the jury failed to give her such damages, the court before which the trial was had was very properly applied to in her behalf to set aside the verdict. It had the power to do that, and a direction to that effect should have been given in the case. (Code, § 264; *Robbins* v. *Hudson R. R. R.*, 7 Bos., 1; *Algeo* v. *Duncan*, 39 N. Y., 313; *McDonald* v. *Walter*, 40 id., 551.) But that was not done, the motion on the contrary was denied. And from the order denying it the plaintiff has appealed. But it has been objected that the decision embodied in that order cannot be now reviewed, because it does not appear that this point was presented in support of the order, And the case of *Count Joannes* v. *Jennings*, 11 S. C. N. Y. [4 Hun], 66, has been relied upon as authority for that objection. But that case did not go to that extent. What was there held was, that a decision upon a mere formal motion for a new trial at the circuit could not be reviewed by an appeal to the General Term. It was intended simply to disapprove of the practice, which had become quite common of formally moving for a new trial on the rendition of a verdict, without any intention that it should be considered or reflectingly decided by the court.

This case appears in a very different shape. The order states that the verdict for nominal damages had been returned; that a motion on behalf of the plaintiff was made upon the minutes of the court for a new trial, and after hearing counsel for the respective parties such motion was denied. This language shows that the case was heard by the court, and decided upon consideration. In form the order is the same as the General Term is in the constant

habit of reviewing on appeal. The particular grounds assigned in support of the motion are not required to be specifically mentioned. But what is necessary is that it shall appear from the order that the application was actually heard and decided. And that has been sufficiently disclosed by the order made in this case. But two positions could be taken in support of the motion and the important one is recited in the order, that of the assessment of the plaintiff's damages at six cents. In this respect the verdict of the jury was entirely wrong.

Even a jury should not be permitted under the forms of law to do what is shown to be palpably unjust. And from the conclusion reached by them upon the facts forming the legal foundation of their verdict, that has been done in this case. The order denying the motion made for a new trial should be reversed with costs to the appellant and an order entered setting aside the verdict and directing a new trial, and the appeal from the judgment should be dismissed with costs to the respondent.

DAVIS, P. J., and BRADY, J., concurred.

Appeal from judgment dismissed with costs; order denying new trial reversed with costs and motion for new trial granted.